UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MEEK,

        Petitioner,

v.                                 CASE NO. 09-11674
                                 HONORABLE MARIANNE O. BATTANI

DAVID BERGH,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DENYING THE MOTION FOR AN EVIDENTIARY HEARING, BUT
## GRANTING A CERTIFICATE OF APPEALABILITY

Pending before the Court are petitioner Brian Meek's habeas corpus petition and motion for an evidentiary hearing. The habeas petition challenges Petitioner's plea-based convictions for first- and second-degree criminal sexual conduct. Petitioner alleges that his trial and appellate attorneys were ineffective and that his no-contest plea was involuntary. The Court has determined that Petitioner's claims are procedurally defaulted. Accordingly, the habeas petition and motion for an evidentiary hearing must be denied.

## I. Background

### A. The Charges, Plea, Sentence, and Direct Appeal

Petitioner initially was charged in Oakland County, Michigan with one count of third-degree criminal sexual conduct and one count of fourth-degree criminal sexual conduct. The charges arose from allegations that Petitioner exposed his penis and had

sexual contact and sexual intercourse with a young woman whom he hired to clean his house.  The alleged incidents occurred between May and December of 2001 when the complainant was fourteen or fifteen years old.

Following the preliminary examination, the prosecutor moved to amend the charges to include two counts of first-degree criminal sexual conduct, one count of second-degree criminal sexual conduct, and two counts of indecent exposure.  The state district court granted the prosecutor's motion and bound Petitioner over to Oakland County Circuit Court on the amended charges.

On June 23, 2003, Petitioner pleaded no contest to one count of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1), and one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1).   In return, the prosecutor dismissed the other three charges, and the trial court agreed to sentence Petitioner to no more than the middle of the sentencing guidelines range as determined by the court at sentencing.

Petitioner moved to withdraw his plea, but the trial court denied his motion.  On September 30, 2003, the trial court sentenced Petitioner to ten to thirty years in prison for first-degree criminal sexual conduct and four to fifteen years in prison for second-degree criminal sexual conduct.  Petitioner filed another motion to withdraw his plea, but the trial court denied his motion after concluding that there was no basis on which to allow Petitioner to withdraw his plea.

In an application for leave to appeal, Petitioner challenged the scoring of the state sentencing guidelines.  He also alleged that the trial court abused its discretion when it denied his motions to withdraw his plea.  The Michigan Court of Appeals denied

2

leave to appeal "for lack of merit in the grounds presented," People v. Meek, No. 259425 (Mich. Ct. App. Mar. 10, 2005), and on October 31, 2005, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Meek, 705 N.W.2d 126 (2005) (table). The United States Supreme Court denied a petition for the writ of certiorari on June 26, 2006. See Meek v. Michigan, 548 U.S. 910 (2006) (table).

**B. The Post-Conviction Motion and Collateral Appeal**

Petitioner raised his habeas claims in a motion for relief from judgment filed on May 16, 2007. He argued that: 1) his trial attorney was ineffective for making false and incorrect statements regarding the effect of his plea; 2) his plea was involuntary because his trial attorney made false and incorrect statements regarding the effect of his plea; 3) his plea was involuntary because his trial attorney violated the attorney-client privilege and the duty of loyalty to his client; 4) his appellate attorney was ineffective; and 5) he was entitled to have his legal issues heard. The trial court noted in a written opinion that, under Michigan Court Rule 6.508(D), Petitioner was required to demonstrate "good cause" for the failure to raise his claims on appeal and "actual prejudice" from the alleged irregularities that supported his claims. The trial court concluded that Petitioner had not satisfied the prejudice prong of this test and, therefore, he was not entitled to the relief he sought.

Petitioner appealed the trial court's decision without success. The Michigan Court of Appeals denied leave to appeal on the basis that Petitioner had "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." People v. Meek, No. 285533 (Mich. Ct. App. Sept. 5, 2008). On March 23, 2009, the

3

Michigan Supreme Court denied leave to appeal for the same reason.  See People v.

Meek, 762 N.W.2d 515 (2009) (table)

### C.  The Habeas Petition and Responsive Pleading

Petitioner filed his habeas corpus petition through counsel on May 1, 2009.  His

claims are:

I.      Petitioner had ineffective assistance of counsel at his plea,
        where counsel overcame Petitioner's unwillingness to plead
        by making false and incorrect statements about the matters
        on which Petitioner was asking.

II.     Petitioner's plea was involuntary where counsel overcame
        Petitioner's unwillingness to plead by making false and
        incorrect statements about the matters on which Petitioner
        was asking.

III.    Petitioner's plea was involuntary and otherwise invalid where
        counsel violated [the] attorney-client privilege and his duty of
        loyalty to the client to put further pressure on Petitioner to
        plead.

IV.     Petitioner was prejudiced by ineffective assistance of
        counsel on appeal.

## II.  Discussion

The State argues in an answer to the habeas petition that Petitioner procedurally

defaulted his claims by raising them for the first time in his motion for relief from

judgment and subsequent appeals.  Under the doctrine of procedural default, "a federal

court will not review the merits of claims, including constitutional claims, that a state

court declines to hear because the prisoner failed to abide by a state procedural rule."

Martinez v. Ryan, __ S. Ct. __, __, No. 10-1002, 2012 WL 912950, at *6 (U.S. Mar. 20,

2012).  Stated differently, a claim is procedurally defaulted and may not be considered

by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain

4

consideration of a claim by a state court . . . due to a state procedural rule that prevents

the state courts from reaching the merits of the petitioner's claim." Seymour v. Walker,

224 F.3d 542, 549-50 (6th Cir. 2000) (citing Wainwright v. Sykes, 433 U.S. 72, 80,

84-87 (1977), and Picard v. Connor, 404 U.S. 270, 275-80 (1971)).  Three elements

must be satisfied before a claim may be considered procedurally defaulted:  "(1) the

petitioner failed to comply with a state procedural rule that is applicable to the

petitioner's claim; (2) the state courts actually enforced the procedural rule in the

petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent'

state ground foreclosing review of a federal constitutional claim." Willis v. Smith, 351

F.3d 741, 744 (6th Cir. 2003).

### A.  Michigan Court Rule 6.508(D)(3)

The state procedural rule at issue here is Michigan Court Rule 6.508(D), which

reads in relevant part:

> **(D) Entitlement to Relief.**  The defendant has the burden of
> establishing entitlement to the relief requested.  The court may not grant
> relief to the defendant if the motion
>
> . . . .
>
> > (3) alleges grounds for relief, other than jurisdictional
> > defects, which could have been raised on appeal from the
> > conviction and sentence . . . unless the defendant
> > demonstrates
> >
> > > (a) good cause for failure to raise such
> > > grounds on appeal or in the prior motion, and
> > >
> > > (b) actual prejudice from the alleged
> > > irregularities that support the claim for relief.
> > > As used in this subrule, "actual prejudice"
> > > means that

> . . . .
>
>> (ii) in a conviction entered
>> on a plea of . . . nolo contendere,
>> the defect in the proceedings was
>> such that it renders the plea an
>> involuntary one to a degree that it
>> would be manifestly unjust to
>> allow the conviction to stand;
>
> . . . .
>
> The court may waive the "good cause" requirement of subrule (D)(3)(A) if
> it concludes that there is a significant possibility that the defendant is
> innocent of the crime.

Mich. Ct. R. 6.508(D)(3).

Petitioner raised his pending claims in the trial court, in the Michigan Court of

Appeals, and in the Michigan Supreme Court during collateral proceedings. Both

appellate courts issued one-sentence orders denying leave to appeal for failure to

establish entitlement to relief under Michigan Court Rule 6.508(D). These "[b]rief orders

citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar."

Guilmette v. Howes, 624 F.3d 286, 289 (6th Cir. 2010). The Court therefore must look

to the last reasoned state court opinion to determine the basis for the state courts'

rejection of Petitioner's claims. Id. at 291. If the last reasoned opinion appears to rest

primarily on federal law, the Court must presume that any subsequent unexplained

orders that left the earlier judgment or its consequences in place did not invoke a

procedural default. Id. at 291-92.

The trial court was the last state court to issue a reasoned opinion on Petitioner's

claims. Its opinion is based solely on state law. It quoted portions of Rule 6.508(D)(3)

and then analyzed whether Petitioner had demonstrated "actual prejudice" under the

rule. The court concluded that, because Petitioner's plea was not involuntary and his trial attorney was not ineffective, he failed to satisfy the "actual prejudice" prong of Rule 6.508(D)(3). The trial court did not rely on federal law; instead, it enforced Rule 6.508(D)(3).

To summarize, all three elements of procedural default are satisfied here. Petitioner violated a state procedural rule (Rule 6.508(D)(3)) by failing to raise his claims on direct appeal. The last state court to issue a reasoned order relied on the rule to deny relief, and the rule was an adequate and independent state ground for denying relief. Malone v. Sherman, 412 F. App'x 803, 808 (6th Cir.), cert. denied, __ U.S. __, 132 S. Ct. 244 (2011). Therefore, "federal habeas review of [Petitioner's] claims is barred unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

**B. Appellate Counsel as Cause**

Petitioner claims that his appellate attorney was "cause" for his procedural default. "Ineffective assistance of appellate counsel can constitute cause to excuse a procedural default." Hoffner v. Bradshaw, 622 F.3d 487, 499 (6th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2117 (2011). But "[a]ttorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." McCleskey v. Zant, 499 U.S. 467, 494 (1991) (citing Murray v. Carrier, 477 U.S. 478, 486-88 (1986)). "[C]ounsel has no obligation to raise every possible claim and 'the decision of which among the possible claims to pursue is ordinarily entrusted to

7

counsel's professional judgment.'" Jalowiec v. Bradshaw, 657 F.3d 293, 321-22 (6th Cir. 2011) (quoting McFarland v. Yukins, 356 F.3d 688, 710 (6th Cir. 2004)).

Petitioner must show (1) that his appellate attorney was objectively unreasonable in failing to raise nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal were it not for his attorney's unprofessional errors. Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). In order to assess Petitioner's claim about appellate counsel, the Court must look at Petitioner's other claims to determine whether those claims are clearly stronger than the issues counsel did present on direct appeal and whether Petitioner would have prevailed if he had raised the claims on direct appeal. Thompson v. Warden, Belmont Corr. Inst., 598 F.3d 281, 285 (6th Cir. 2010).

### 1. Trial Counsel's Advice

The first habeas claim alleges that Petitioner was deprived of effective assistance of counsel by his trial attorney's incorrect statements about prison camps and work release. According to Petitioner, his attorney incorrectly advised him that, if he pleaded no contest, he would be eligible for work release or confinement at a prison camp. In support of this claim, Petitioner has submitted a DVD, which depicts a conversation between him and his trial attorney before the no-contest plea. Petitioner has transcribed the conversation as follows:[1]

14:16:13     DEFENDANT: How about a recommendation for work release and counseling?

---

[1] Although the DVD is muffled due to other noise in the courtroom when this conversation occurred, Petitioner's transcription appears to be accurate.

8

14:16:17    MR. CLARK [trial counsel]: That will be up at the sentencing.  The only recommendation there will be will be treatment, which would, it will not – Work release happens at the camps, she doesn't have a say in it.

14:16:29    DEFENDANT: She's going to recommend a camp as well?

MR. CLARK: She's going to recommend treatment.  Treatment means the camp.  She can't tell – she can't say where to place you, but with treatment there are always certain facilities.

These comments implied that Petitioner would receive treatment and be eligible for placement in a prison camp.  As a sex offender, however, Petitioner was not eligible for placement in a camp, Mich. Comp. Laws § 769.2a, or for work release, Mich. Admin. R. 791.4420(1)(d).  The question is whether counsel's comments amounted to ineffective assistance.

### a.  Legal Framework

A defendant is entitled to effective assistance of competent counsel before deciding whether to plead no contest.  Padilla v. Kentucky, __ U.S. __, __, 130 S. Ct. 1473, 1480-81 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  But to prevail on his claim about trial counsel, Petitioner must satisfy "the two-part test set forth in Strickland."  Missouri v. Frye, __ S.Ct. __, __, No. 10-444 , 2012 WL 932020, at *5 (U.S. Mar. 21, 2012).  This requires showing that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  In the context of a guilty or no-contest plea, a deficient performance is one that fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases.  Hill v. Lockhart, 474 U.S. 52, 56-

9

57 (1985).

The "prejudice" prong of the two-part Strickland test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59. In other words, the petitioner "must show [that] the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, ___ S. Ct. ___, ___, No. 10-209, 2012 WL 932019, at *5 (U.S. Mar. 21, 2012). The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### b. Application

Petitioner alleges that, if he "had known that the sentence involved prison, no camp, and no work release, [he] would not have entered the no contest plea, but would have instead insisted on going to trial." Pet. for Habeas Corpus, App. 10, Aff. of Brian Meek, ¶ 6. Petitioner cannot demonstrate "prejudice" merely by telling the Court that he would have gone to trial if he had received different advice. Pilla v. United States, 668 F.3d 368, 372-73 (6th Cir. 2012). "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Id. at 373 (quoting Padilla, 130 S. Ct. at 1485).

A decision to reject the plea bargain in this case would not have been rational for the following reasons. First, the evidence against Petitioner was substantial, and there was a strong likelihood that he would have been convicted as charged if he had gone to

10

trial.[2]  By pleading no contest, Petitioner was able to have three counts, including one count of first-degree criminal sexual conduct, dismissed.

Second, the plea agreement contained a favorable sentencing provision: the trial court agreed to sentence Petitioner at the middle to bottom of the sentencing guideline range.  Petitioner could have been sentenced to eleven more years than what the plea agreement called for if he had gone to trial and been convicted as charged.  (Tr. June 23, 2003, at 5.)  The prosecutor, moreover, considered asking the trial court to exceed the sentencing guidelines and to sentence Petitioner to a minimum sentence of thirty years in prison if Petitioner were convicted as charged.  (Id.)

Finally, trial counsel did not make any promises to Petitioner about work release or treatment.  According to Petitioner's own affidavit and his transcription of his conversation with trial counsel, counsel advised Petitioner that the trial court had no "say" in work release and no authority to determine where Petitioner was placed within the correctional system.

Trial counsel also did not promise treatment.  He merely stated that the trial court

---

[2]  The complaining witness gave compelling testimony at the preliminary examination, and the prosecutor had medical evidence to corroborate her testimony. (Tr. Oct. 20, 2004, at 8.)  The prosecutor also was prepared to call witnesses to support the allegations against Petitioner.  The victim's sister could have testified that there were times when she was locked out of Petitioner's house while Petitioner was alone with the complainant inside the house.  The sister heard screaming and noises that were not consistent with somebody having a good time.  (Id. at 9.)  Mental health professionals could have testified about psychological problems that the complainant experienced as a result of the incidents with Petitioner.  (Id. at 10.)  As for Petitioner's alibi defense that he was working out of town during the times in question, the prosecutor determined that Petitioner generated his own work logs and that the crimes occurred during a wider period of time when he was not engaged in his truck-driving business.  (Id. at 8-9.)

would recommend treatment.  Although counsel implied that Petitioner would be eligible for treatment and placement at a prison camp, a defense attorney's inaccurate prediction that a defendant would be eligible for camp if the defendant pleaded guilty does not amount to gross mis-advice or a gross mischaracterization.  United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999); McCoy v. United States, No. 10-C-1121, 2012 WL 554497, at *3-4 (E.D. Wis. Feb. 21, 2012) (unpublished).

The Court concludes that a decision to reject the plea offer would not have been objectively rational.  Therefore, even if the Court were to assume that trial counsel's performance was deficient, Petitioner has failed to establish the "prejudice" prong of the Strickland and Hill tests.  Because trial counsel was not constitutionally ineffective, appellate counsel was not ineffective for failing to raise habeas claim one during the direct appeal.  "An appellate attorney is not required to raise a non-meritorious claim." Jalowiec, 657 F.3d at 321.

### 2. The Voluntariness of the Plea and Trial Counsel's Advice

In a related claim (habeas claim two), Petitioner alleges that his no-contest plea was involuntary as a result of his attorney's statements about camp and work release. Petitioner asserts that he was misled about the value of his plea and therefore his plea was involuntary and unknowing.

### a. Legal Framework

"A guilty or no-contest plea involves a waiver of many substantial rights." Fautenberry v. Mitchell, 515 F.3d 614, 636 (6th Cir. 2008) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)).  Consequently, the plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely

12

consequences." Brady v. United States, 397 U.S. 742, 748 (1970). "A guilty plea can be involuntary as a result of the ineffective assistance of counsel." United States v. Gardner, 417 F.3d 541, 545 (6th Cir. 2005). But "a 'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats . . . , misrepresentation . . . , or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.'" Bousley v. United States, 523 U.S. 614, 619 (1998) (quoting Brady, 397 U.S. at 755); see also Ruelas v. Wolfenbarger, 580 F.3d 403, 408 (6th Cir. 2009) (explaining that the defendant must appreciate the consequences of his plea, waive his rights without coercion, and understand the rights that he is surrendering), cert. denied, __ U.S. __, 130 S. Ct. 3322 (2010). The voluntariness of a plea is determined by considering all the relevant circumstances surrounding the plea. Brady, 397 U.S. at 749.

### b. Application

Petitioner initially rejected the prosecutor's plea offer "out of hand" even though defense counsel agreed to ask the trial court to recommend treatment for Petitioner. (Tr. June 23, 2003, at 4.) In other words, he initially rejected the plea offer knowing that his attorney intended to ask the trial court to recommend treatment for him. And, at his sentencing, Petitioner did not say anything about camp or work release. Instead, he stated that he had been forced to plead no contest because his attorney was unprepared for trial. He also implied that his attorney had led him to believe that he would receive a sentence of four or five and a half years in prison, which was considerably less than the guideline range of nine to fifteen years. (Tr. Sept. 30, 2003, at 17-18.) Thus, the record tends to refute Petitioner's claim that his no-contest plea

13

resulted from his attorney's comments about camp and work release.

There are other indications that the pre-plea conversation between Petitioner and his trial attorney did not render the plea involuntary. The plea agreement was stated on the record at the plea proceeding, and Petitioner claimed to understand that he was pleading no contest to first- and second-degree criminal sexual conduct. He also claimed to understand that the maximum penalty for first-degree criminal sexual conduct was life imprisonment and that the maximum penalty for second-degree criminal sexual conduct was a term of fifteen years.

Additionally, Petitioner stated that he understood the trial court would "cap" his prison sentence at the middle of the sentencing guidelines. Significantly, after being informed that the prosecutor would dismiss the other three counts against him, Petitioner stated that he was not aware of any other agreement. (Tr. June 23, 2003, at 12.) Petitioner also stated that he understood he was giving up certain trial rights and the right to claim that his plea was a result of promises which had not been disclosed to the trial court. He claimed that it was his own choice to enter a plea of no contest. (Id. at 13-14.)

The only mention of treatment was trial counsel's comment that the trial court had said it would recommend treatment and that would "be of some help as to where [the defendant] is assigned once he's in the Department of Corrections." (Id. at 8.) Although the trial court apparently was willing to recommend treatment, "it would be within the purview of the Department of Corrections to determine whether to follow this recommendation." People v. Mileski, No. 280563, 2008 WL 4823012, at *2 (Mich. Ct. App. Nov. 6, 2008) (unpublished). Furthermore, being sent to a prison camp would not

14

affect the length of Petitioner's sentence.

To summarize, the record indicates that Petitioner's plea was voluntary.  He claimed to understand the maximum penalty for his crimes, and he admitted that he was not promised anything other than what was contained in the plea agreement. His plea was not invalid simply because he may not have correctly assessed every relevant factor entering into his decision.  Brady, 397 U.S. at 757.  Consequently, appellate counsel was not ineffective for failing to argue that Petitioner's plea was involuntary due to his trial attorney's comments about camp and work release.

### 3.  The Attorney-Client Privilege and Duty of Loyalty

Habeas claim three alleges that Petitioner's no-contest plea was involuntary and invalid because trial counsel announced in court during plea negotiations that Petitioner had rejected a plea offer against counsel's advice.  Petitioner maintains that trial counsel's disclosure of his confidential conversation with Petitioner violated the attorney-client privilege and counsel's duty of loyalty to Petitioner.

### a.  The Attorney-Client Privilege

The Court of Appeals for the Sixth Circuit explained in Ross v. Memphis, 423 F.3d 596 (6th Cir. 2005), that

> [t]he attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.  The privilege's primary purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.

Id. at 600 (citations and quotation marks omitted).

Here, the only communication that Petitioner's trial attorney disclosed to the trial

15

court was the fact that Petitioner did not want to accept the prosecutor's plea offer.  It was necessary to inform the trial court of Petitioner's decision because the court was prepared to start trial that afternoon if the parties did not reach an agreement.  Trial counsel did not divulge any other details of his conversation with Petitioner.  Thus, there was no violation of the attorney-client privilege occurred.[3]

### b.  The Duty of Loyalty

In addition to informing the trial court that Petitioner had rejected the prosecutor's plea offer, trial counsel stated that he thought Petitioner was making "a huge mistake" and that he (trial counsel) was making a record of this "for [his] own sake." (Tr. June 23, 2003, at 4.)  Petitioner concludes from these remarks that his attorney had his own interests in mind rather than Petitioner's interests.  Petitioner also interprets his attorney's remarks to mean that trial counsel did not believe Petitioner's claim of innocence and that counsel was blaming Petitioner for the decision to go to trial.

The duty of loyalty is "perhaps the most basic of counsel's duties."  Strickland,

---

[3] The claim lacks merit in any event because, even if it were not procedurally defaulted,

> the "attorney-client privilege is a creation of the common law, not the Constitution." Lange v. Young, 869 F.2d 1008, 1012 n. 2 (7th Cir. 1989). As such, a violation of the attorney-client privilege is not itself a "violation [ ] of the United States Constitution or its laws and treaties," as is required by § 2254 before [the Court] may issue habeas on a given claim.  See ibid. ("Even if a violation of the attorney-client privilege occurred, this violation alone would be insufficient grounds for [habeas] relief."). . . .   Nor has the Supreme Court said differently.

Sanborn v. Parker, 629 F.3d 554, 575 (6th Cir. 2010) (emphasis in original), cert denied, __ U.S. __, 132 S. Ct. 498 (2011).  Thus, Petitioner cannot argue that a violation of the attorney-client privilege is a sufficient ground for habeas relief per se.  Id.

466 U.S. at 692.  A defense attorney has an "overarching duty to advocate the defendant's cause" and to assist the defendant.  Id. at 688.

The evidence against Petitioner was substantial, and there was a strong possibility that Petitioner would have received a longer sentence had he gone to trial and been convicted as charged.  Therefore, trial counsel did not breach the duty of loyalty when suggesting that Petitioner was making a mistake by rejecting the prosecutor's plea offer.  Although trial counsel did say that he was making a record of Petitioner's decision for his own sake, he obviously was concerned that Petitioner would go to trial, be convicted, and then blame trial counsel for the outcome.  Cf. Lafler, 2012 WL 932019, at *4, where the issue was the remedy "when inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome."

Petitioner has failed to show that his attorney violated the attorney-client privilege or breached the duty of loyalty.  Therefore, appellate counsel was not ineffective for failing to raise habeas claim three on direct review.  An appellate attorney cannot be ineffective for failing to raise a claim that lacks merit.  Willis, 351 F.3d at 745 (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

### C.  Prejudice; Miscarriage of Justice

There is not a reasonable probability that Petitioner would have prevailed if he had raised habeas claims one through three on direct appeal.  Therefore, appellate counsel was not ineffective, and Petitioner has not shown "cause" for his procedural

default of failing to comply with Michigan Court Rule 6.508(D)(3).[4]  Because Petitioner has not shown "cause" for the procedural error, the Court need not consider whether he was prejudiced by the alleged constitutional errors.  Tolliver v. Sheets, 594 F.3d 900, 930 n.13 (6th Cir.), cert. denied,  __ U.S. __, 131 S. Ct. 605 (2010).

The "cause and prejudice" requirement may be overlooked and habeas relief granted "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust v. Zent, 17 F.3d 155, 162 (6th Cir. 1994) (citing Carrier, 477 U.S. at 496).  To be credible, however, "such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner has not submitted any new evidence to support a claim of actual innocence.  Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of his claims.

## III.  Conclusion

Petitioner failed to raise his claims on direct appeal, and the last state court to issue a reasoned opinion rejected his claims on that basis.  Petitioner has not shown "cause" to excuse his procedural default, and the failure to consider his claims will not result in a fundamental miscarriage of justice.  Accordingly, Petitioner's claims are procedurally defaulted.  The petition for writ of habeas corpus [dkt. #1] and the motion

---

[4] For the same reason, Petitioner has failed to state an independent claim of ineffective assistance of appellate counsel.

18

for an evidentiary hearing [dkt. #13] are **DENIED**.

Reasonable jurists, however, could debate whether the Court's procedural ruling is correct and whether Petitioner has stated a valid claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability may issue on all four habeas claims. "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).


                            s/Marianne O. Battani
                            MARIANNE O. BATTANI
                            UNITED STATES DISTRICT JUDGE

Dated: May 16, 2012

### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, via the Court's ECF Filing System.

                            s/Bernadette M. Thebolt
                            Case Manager